IN THE MATTER OF. THE .GUARDIANSHIP OF
JAMES HOARE, a Minor.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED OCTOBER 14, 1902.    DECIDED NOVEMBER 7, 1902.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

If a guardian mixes the trust funds with his own and keeps no separ-
ate account which is complete, reliable or satisfactory, he must
be charged with interest upon money which he permits to lie
idle for an unreasonable length of time.

A guardian is chargeable not only with rents actually received by
him from the property of his ward but also with such additional
rents as he would have obtained had he faithfully and diligently
discharged his duties.

While a guardian should be allowed all sums reasonably necessary
for the maintenance of the ward and paid by him for such pur-
pose out of the income of the estate, still, where it appears- that
such payments were made by a deceased guardian, not at regular
intervals or in regular amounts, but only irregularly as necessity
required, the guardian's estate cannot, upon an accounting by
the executor of the will of the deceased guardian, be allowed, in
addition to payments shown to have been actually made, a lump
sum for further payments not shown to have been made but based
merely upon conjecture.

A guardian who is guilty of gross negligence in the performance of
his duties is not entitled to commissions.

OPINION OF THE COURT BY PERRY, J.

A. Rosa was, on May 4, 1880, appointed guardian of the
estate of James Hoare, a minor.  The first annual account was
filed by him on July 15, 1881.  He died in September, 1898,
without having rendered any other account of his administration
of the trust.  After motion therefor, the executor of the will

of the deceased guardian filed, in 1901, an account of receipts and expenditures purporting to cover the period from July, 1881. This account and a supplement thereto subsequently filed, were examined and reported upon by a Master. The latter's report was, after exceptions and hearing thereon, confirmed by the probate court, and it is from that decree of confirmation that this appeal is taken.

Four points are relied upon by the executor appellant. The first is that the Master erred in surcharging the guardian with interest on the sum of $284.07 found by the Master to have been on hand and uninvested for a period of eleven years. To the finding itself no objection is made, but the contention is that it was not only proper but necessary for the guardian to retain that small sum on hand in order to meet contingent expenses. Under some circumstances, the retention by a guardian of a small sum of money, uninvested, would be justifiable and he would not be chargeable with interest for so retaining it, but such a case is not here presented. It appears from the report of the Master and otherwise from the record that the guardian in the case at bar did not keep the funds of his ward entirely separate from but mixed them with his own, that he kept no reliable or satisfactory account of his receipts or expenditures in his trust capacity, that for a period of over nineteen years no account of his doings was filed in court, and that in other respects he was guilty of negligence in the administration of his trust. Under these circumstances, the guardian was properly charged with interest upon the sum which he failed to invest for the period stated. See *Knowlton v. Bradley*, 17 N. H. 458, 460; *Starrett v. Jameson*, 29 Me. 504, 506; *Mulholland's Estate*, 176 Pa. St. 411, 417; 15 Am. & Eng. Encycl. Law, 2nd Ed., 95.

The second point is, "that the computation of rents by the Master in his report was grossly erroneous and unfair to the estate" of the deceased guardian. The estate of the ward at the time of the institution of the trust consisted, with but slight exceptions, of a certain piece of land with the buildings thereon

situate at or near the corner of Alakea and King streets in this city. On July 25, 1881, certain adjoining land was, by leave of court, purchased by the guardian for $1010, and the whole property was thereupon mortgaged for the sum of $2300. Of the sum thus borrowed, about $1300 was used in repairing the buildings upon the entire property. The mortgage was foreclosed on November 1, 1892, and the property sold. The main source of income of the estate was the rent derived from these premises. The Master, whose report shows that his work was done with much care and with thoroughness, found, and the correctness of the finding is not questioned, that the rent account kept by the guardian was incomplete and cannot be relied on as showing total rents collected. Following the statement of this finding the Master says in his report: "I think that from the time the first marked decline in rents begins the guardian should be charged, not with the rent shown in his final account and the additional vouchers filed with me, but with the amount of rental the estate·was capable of producing as shown by the rents accruing in preceding years and actually collected and that in determining this water rates paid by tenants should be included as being rent under a different name." The principle so adopted was, we think, correct and applicable. A guardian is chargeable not only with the rents actually received but also with such additional rents as he would have obtained had he faithfully and diligently discharged his duties in that respect. The Master found that the guardian was not diligent in the collection of rents or careful in the choice of tenants.

The rents actually received were, as shown by the final accounts of the guardian: 1880, $191.00; 1881, $372.50; 1882, $636.25; 1883, $668.75; 1884, $508.45; and, not including water rates, 1885, $222.25; 1886, $170.00; 1887, $343.00; 1889, $323.00; 1890, $289.00; 1891, $475.00; 1892, $201.75. The Master recommended that the guardian be charged with the rent actually received, that accrued in 1880, 1881, 1882 and 1883 as appears in the guardian's account and that for the years 1884 to 1892, 8 10-12 years, he be charged with the sum

of $668.75 per year, that being the total collected in 1883 and
giving, in the Master's opinion, the most reliable evidence of
the income which the estate with reasonable care was capable
of producing. For the appellant it is contended that this esti-
mate is too high and unfair because the buildings, although
repaired in 1881, must have been again in need of repairs in
the later years of the term under consideration  The Master
in his report says that some evidence was adduced by the execu-
tor bearing upon this point, but made no express finding as to
the condition of the buildings at the time in question. In this
connection, we must call attention to the fact that no transcript
of the evidence taken before the Master has been furnished us
on this appeal and that therefore the Master's findings and the
decree appealed from must be sustained unless error appears on
the face of the report.

It is due to the neglect of the guardian alone that more
definite data were not available for the assistance of the Master
or of the court in determining the true state of the account. We
cannot, as the record now stands, say that the Master has erred
in his statement of the account or, with assurance, that we can
make a different finding more in conformity with justice.
"Having no certain and reliable data on which to proceed, he"
(the Master) "was authorized to exercise a sound discretion,
upon the whole evidence presented, and so to state his account
as to do justice to all persons, as nearly as practicable. * * *
And the defendant, who by his negligence has caused this
necessity, is not in a position to complain."—*Miller v. Whittier*,
36 Me. 577, 585.

The claim that the Master has twice charged against the
guardian a certain item of $714 for rents, we find to be un-
supported by the record.

The appellant's third point is, "that the portion of the Mas-
ter's report in which he totally disallowed all amounts filed for
the support of the ward according to the calculation in said
account—was erroneous and that said account for support of
ward should have been allowed." It is inaccurate to say that

the Master disallowed all amounts claimed for the support of the ward. In the original account appear items of this class in the total sum of $158.00 and these were allowed. So, too, the Master allowed, out of a total of $195.00 claimed in the supplementary account, items to the amount of $150.00 for which vouchers were produced. He did disallow, however, the balance of $45.00 of these items and also the item of $1290.00 claimed in the supplementary account. · Of the last mentioned item the Master says: "There is a claim in the supplemental account for $1290.00 for support of the ward, being calculated at $10.00 a month for all months, 1880 to 1892 inclusive, in which no payments for support appear. But the vouchers as far as they do appear show that the guardian did not regularly pay $10.00 a month or pay any regular allowance. The ward was during this period cared for by his grandaunt Waikane. A receipt by her dated December 17, 1887, for moneys received in October, November and December, 1887, shows payment to her for ward's support of $5.00 in October, $3.00 in November, $15.00 in December. A letter from her to the guardian of November 5, 1885, acknowledges receipt of $10.00 and at once asks for more for school books, hat, shoes, etc. It is quite possible that she asked for money only as there was special need and the guardian paid irregularly. There being no proof that a regular allowance was made Waikane, the guardian of the person of James Hoare by the guardian of the estate, I recommend the disallowance of this item."

As stated by the Master and as appears from the supplemental account itself, the amount of $1290.00 was arrived at by the executor simply by ascertaining the number of months during which no payments appeared in the accounts, 129, and then claiming a payment of $10.00 for each of those months,—by pure conjecture and not otherwise. The finding of the Master that there is no proof of a regular allowance to the guardian of the person but that on the contrary the payments appeared to be at irregular intervals as necessity required, cannot, upon the

state of the record already alluded to, be disturbed. The disallowances are confirmed.

The executor claimed in the account $409.10 as commissions of the guardian. Of this, $38.64, allowed upon the filing of the first annual account, was allowed by the Master, and the remainder disallowed. In this it is contended,—fourth point—that there was error. We think otherwise. "The law is clear that statutory commissions are provided for the faithful and proper execution of trusts and where an administrator does not comply with the duties devolved upon him by his appointment, he is not entitled to commissions."—*In re Estate of Akana*, 11 Haw. 420, 422. The same rule applies to guardians. See *In re Estate of Joseph Lazarus*, 13 Haw. 242, 245, and *In re Estate of Alina*, Ib. 388, 390. Under the circumstances of this case, already recited, the ruling of the Master in this respect is sustained.

The decree appealed from is affirmed.

*L. Andrews* for executor of will of guardian.

*Kinney, Ballou & McClanahan* and *H. A. Bigelow* for ward.